Sharon Djemal (SBN 208461)
EAST BAY COMMUNITY LAW CENTER
1950 University Avenue, Suite 200
Berkeley, CA 94704
Telephone: (510) 269-6612
Facsimile: (510) 849-1536
Email: sdjemal@ebclc.org

Dan Siegel (SBN 54600)
EmilyRose Johns (SBN 294319)
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: danmsiegel@gmail.com; emilyrose@siegelyee.com

Attorneys for Plaintiffs
KATHERINE DE LA RIVA and
WILLIAM ALLAN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE DE LA RIVA and WILLIAM ALLAN,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF OAKLAND,<br>KALEO ALBINO,<br>PATRICK GONZALES, and<br>SEAN ALEXANDER MARINE SERVICES INC.,<br><br>    Defendants. | Case No.: 3:19-cv-6106<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br><br>   **Civil Rights**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Katherine De la Riva and William Allan allege as follows:

## INTRODUCTION

1. On or about October 3, 2018, with no authority, insufficient notice, and no opportunity for contestation, the Marine Unit of the City of Oakland's police department and Sean Alexander Marine Services Inc. removed Katherine De la Riva's and William Allan's house boats from the Jack London Aquatic Center's estuary and destroyed them.

2. These vessels were plaintiffs' homes and contained possessions with sentimental and monetary value. Both plaintiffs are now homeless as a result of this unlawful disposal of their boats, which served as their only homes, and both plaintiffs suffer the irrevocable loss of the majority of their earthly possessions.

3. This taking and destruction of plaintiffs' homes violated their federal constitutional rights to be free from unreasonable seizure, from deprivation of property without due process of law, and from taking of property without just compensation. It also violates statutory and common law. Absent court intervention, defendants will continue to improperly remove vessels from Oakland waterways without due process or just compensation.

4. Plaintiffs are seeking damages for the loss of their homes and personal belongings, injunctive relief to prevent defendants from taking and destroying property without following lawful procedures, and a declaratory judgment that the practices and conduct of defendants as alleged herein are unlawful under state and federal law.

## PARTIES

5. At all times relevant hereto, plaintiff Katherine De la Riva, owned a 1979 Nautaline houseboat bearing hull identification number NTA431960478 and registered with the State of California Department of Motor Vehicles under vessel registration number CF1197GL. This vessel was her sole home and place of residence for over three years.

6. At all times relevant hereto, plaintiff William Allan, age 73, owned a 1979 O'Day sailboat bearing hull identification XDYS1025M79H and registered with the State of California Department of Motor Vehicles under vessel registration number CF5590GP. This vessel was his home.

7. Within the year prior to the commencement of this action, plaintiffs Katherine De la Riva and William Allan were residents of the City of Oakland and paid taxes funding the City of Oakland and the State of California.

8. At all times relevant hereto, defendant City of Oakland was a municipal corporation, duly organized and existing under the laws of the State of California. Under its authority, defendant City of Oakland operates the Oakland Police Department and employs its officers.

9. At all times relevant hereto, defendant Kaleo Albino was an Officer for defendant City of Oakland's police department. He is sued in his individual and official capacity.

10. At all times relevant hereto, defendant Patrick Gonzales was a Sergeant for defendant City of Oakland's police department. He is sued in his individual and official capacity.

11. At all times relevant hereto, defendant Sean Alexander Marine Services Inc. ("Sean Alexander") is a corporation organized the laws of the State of California.

## JURISDICTION

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, as the claims alleged herein arise under 42 U.S.C. § 1983 or are so related the claims arising under 42 U.S.C. § 1983 that they form part of the same case or controversy.

13. The state law claims in this action are so related to the claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution. The Court's jurisdiction over these claims is invoked under 28 U.S.C. § 1367.

## VENUE

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because defendants conduct business in this District and the actions giving rise to this suit occurred within this District.

## STATEMENT OF FACTS

15. On or about October 2, 2018, defendants seized boats belonging to Katherine De la Riva and William Allan along with other vessels docked at the Jack London Aquatic Center

("Aquatic Center"). Ms. De la Riva's houseboat was towed away and reportedly destroyed. Mr. Allan's sailboat was crushed on site.

16. These vessels were plaintiffs' homes and contained nearly all of their personal possessions. Plaintiffs were not given notice that their homes and possessions would be permanently taken or destroyed by the City of Oakland and its agents.

17. Moreover, upon information and belief, defendants continue to pursue their unreasonable policy of seizing vessels and destroying them without proper notice or a meaningful opportunity for residents to retrieve their possessions or homes.

18. Plaintiff Katherine De la Riva inherited a 1979 Nautaline houseboat from her father in 2016. By October 2018, she had been living on it full-time for several years. The boat was Ms. De la Riva's home and contained nearly all of her possessions.

19. In the summer of 2017, Ms. De la Riva first encountered defendant Officer Kaleo Albino from Oakland's Police Department ("OPD"). Ms. De la Riva docked her vessel at the Oakland Marina, where she maintained a liveaboard permit. While in uniform, Officer Albino approached Ms. De la Riva at her houseboat and asked to look inside. Officer Albino stated that the boat was no longer hers and that he was going to purchase the boat.

20. Ms. De la Riva's houseboat was scheduled for a lien sale, but she gathered funds to pay off the lien on her boat and continued to be the registered owner.

21. During the latter part of 2017, Ms. De la Riva moved her boat to several locations around the San Francisco Bay Area. In January 2018, her houseboat's motor broke down, and the Coast Guard towed her boat to the estuary at the Aquatic Center.

22. Throughout her stay at the Aquatic Center, Ms. De la Riva communicated with Officer Albino. Ms. De la Riva explained to Officer Albino that she was actively seeking another location for her boat.

23. In September 2018, Ms. De la Riva found a space on a nearby dock and paid to secure the spot.

24. Around the end of September 2018, a tag was placed on Ms. De la Riva's boat as well as several other boats in the estuary. The tag informed boat owners that they had 72 hours to move their vessels from the estuary. The red tag did not say that vessels would be destroyed.

25. Ms. De la Riva informed Officer Albino of her plans to move the houseboat to the new dock space. Ms. De la Riva asked for a few days to complete the purchase and installation of her motor so she could move her vessel. Officer Albino told Ms. De la Riva that she had until October 5, 2018, to move her vessel. Ms. De la Riva purchased a motor and prepared to install it.

26. On October 2, 2018, without warning or lawful cause to do so, Officer Albino and several other OPD officers searched Ms. De la Riva's vessel and seized it. Ms. De la Riva begged the officers not to take her boat. Instead of giving her an opportunity to install her new motor and move the boat, as she had planned to do that day, the officers gave Ms. De la Riva a few minutes to grab belongings from her houseboat before towing it to the OPD pier.

27. Ms. De la Riva immediately went to the Police Department, where she spoke with defendant Sergeant Patrick Gonzales. Sergeant Gonzales told Ms. De la Riva to call him back the next day. When she called Sergeant Gonzales the following day, he told her to meet him at the OPD pier. Ms. De la Riva believed that she would then be given an opportunity to get her boat back. Instead, when Ms. De la Riva went to the OPD pier on the morning of October 3, 2018, Sergeant Gonzales gave her only ten minutes to gather her possessions before the Marine Unit moved her home yet again.

28. OPD then towed Ms. De la Riva's boat back to the Aquatic Center where OPD and defendant Sean Alexander Marine Services were conducting a boat-clearing operation. Ms. De la Riva followed her boat to the Aquatic Center and witnessed Sean Alexander crush at least five vessels.

29. OPD gave Ms. De la Riva Sean Alexander's phone number. When she called, the person she spoke to on the phone said it was a "police matter" and hung up.

30. An October 2018 invoice from Sean Alexander lists Ms. De la Riva's houseboat as one of six vessels they destroyed pursuant to their contract with OPD.

31. Ms. De la Riva was offered no opportunity to dispute the removal of her houseboat, no opportunity to retrieve it, and no information about how or whether she could retrieve the belongings she was forced to leave on board.

32. Officer Albino and Sergeant Gonzales both gave Ms. De la Riva mere minutes to retrieve items from her residence. Ms. De la Riva was forced to leave behind the bulk of her personal belongings, including her appliances, her grandmother's ashes, her father's watch collection, and other irreplaceable family heirlooms.

33. As a result of OPD's unlawful seizure of her houseboat, Ms. De la Riva, age 41, is homeless. She has been suffering from depression and severe emotional distress since the loss of her home and nearly all of her worldly belongings.

34. In April 2018, Mr. Allan purchased a 1979 O'Day sailboat in Emeryville with the intention of making it his permanent home.

35. Mr. Allan's sailboat was fully operable and in good condition. He planned on making upgrades and repairs in the Bay Area before moving the vessel to Half Moon Bay. A few weeks after purchasing the boat, Mr. Allan docked it in the Aquatic Center's estuary.

36. Around mid-September 2018, Mr. Allan noticed a sticker from the City posted on his vessel.

37. Mr. Allan called OPD and spoke with Officer Albino. Mr. Allan informed Officer Albino about his plans to temporarily dock his boat at the Aquatic Center. Officer Albino did not express disapproval of Mr. Allan's plans, nor did he inform Mr. Allan that his vessel was subject to removal.

38. On October 3, 2018, with no explanation and insufficient notice, the Marine Unit of OPD and Sean Alexander removed Mr. Allan's sailboat from the Aquatic Center and immediately destroyed the entire vessel, including all personal belongings on board.

39. OPD hired Sean Alexander to crush his boat along with several others on the dock that day.

40. Mr. Allan was not afforded any opportunity to collect his belongings, move the vessel, or dispute its removal and destruction before Sean Alexander crushed the boat.

41. When Mr. Allan called OPD, the person he spoke with told him that his sailboat had been destroyed as a "derelict vessel." His vessel was not derelict.

42. OPD gave Mr. Allan the phone number for Sean Alexander. Mr. Allan called to get information about how he could, at the very least, retrieve the personal belongings that were stored on the boat. Sean Alexander did not give Mr. Allan any information. The person he spoke with on the phone simply said it was a "legal matter."

43. Mr. Allan invested time, labor, and financial resources into the sailboat that was his permanent home. His home was destroyed along with all the personal belonging he kept on board. As a result of OPD's actions, Mr. Allan, age 73, is homeless.

44. In November 2017, Officer Albino applied for an Abandoned Watercraft and Abatement Fund grant. California issued a grant of $24,000 to OPD in May 2018.

45. The grant is meant to provide funding for the abatement, removal, storage, and disposal of abandoned or surrendered recreational vessels. As part of the grant, OPD certified that it would comply with all applicable laws and regulations of the State of California, including the California Harbor and Navigation Code.

46. OPD hired Sean Alexander to conduct an estuary cleanup on October 3, 2018. A few days later, Sean Alexander sent an invoice to OPD for their removal services.

47. Sean Alexander removed and crushed vessels that were in the Aquatic Center's estuary, including plaintiffs' homes.

48. Defendants summarily removed and destroyed vessels without lawful authority and without giving plaintiffs proper notice or opportunity to contest the seizure of their property.

49. Upon information and belief, defendants have engaged in a second boat-clearing operation in which they removed and crushed boats without lawful authority and without following proper procedures.

**EXHAUSTION OF ADMINISTRATIVE RELIEF**

50. Plaintiffs each filed a California Government Tort Claims Act claim regarding the matters asserted herein with the City of Oakland pursuant to California Government Code

Section 910 *et seq.* on March 25, 2019. The City of Oakland denied their claim on March 28, 2019.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
VIOLATION OF RIGHT TO BE SECURE FROM UNREASONABLE SEIZURES
42 U.S.C. § 1983; Fourth Amendment
(Asserted Against All Defendants)

51. Plaintiffs incorporate by reference all of the above allegations.

52. Defendant City of Oakland and defendant Sean Alexander Marine Services, acting under the color of state law in concert with the City of Oakland, engaged in unreasonable seizures of plaintiffs' property.

53. Defendant Sean Alexander Marine Services committed acts in furtherance of their agreement with Defendant City of Oakland.

54. Defendants violated plaintiffs' clearly established constitutional right to be secure from unreasonable seizures of their property by towing and destroying plaintiffs' vessels and belongings without a reasonable or lawful cause.

55. Plaintiffs are informed and believe that the defendants have been intentional in seizing and destroying plaintiffs' property without reasonable or lawful cause and/or are deliberately indifferent to the risk that plaintiffs' property would be seized without reasonable or lawful cause.

56. Upon information and belief, defendants continue to pursue its policy of removing boats from Oakland waterways without ensuring that lawful procedures are followed.

57. As a direct and proximate consequence of the defendants' acts, plaintiffs have suffered and will continue to suffer from the seizure and destruction of their personal property, and are entitled to compensatory relief.

### SECOND CAUSE OF ACTION
VIOLATION OF RIGHT TO DUE PROCESS OF LAW
42 U.S.C. § 1983; Fourteenth Amendment
(Asserted Against All Defendants)

58. Plaintiffs incorporate by reference all of the above allegations.

59. Defendant City of Oakland and defendant Sean Alexander Marine Services, acting under the color of state law in concert with the City of Oakland, engaged in the seizure of plaintiffs' property without due process of law.

60. Defendant Sean Alexander committed acts in furtherance of their agreement with Defendant City of Oakland.

61. Defendants owe plaintiffs a duty under the United States Constitution to not deprive plaintiffs of their property without due process of law.

62. Defendants' practices and conduct fail to follow California statutes outlining the procedure for impounding or removing a vessel. Specifically, defendants' towing and destruction of boats violates California Vehicle Code §§ 9872.1 and 9864 and California Harbor and Navigation Code §§ 523, 526, and 551.

63. Defendants' towing and destruction of boats violates California Vehicle Code §§ 9872.1 and 9864 and California Harbor and Navigation Code §§ 523, 526, and 551, which set out the legal requirements for impoundment and disposal of a vessel.

64. California Vehicle Code § 9872.1 does not authorize the impoundment of vessels on which the hull identification number is visibly posted. It also dictates that, after a vessel is impounded, a "notice of impoundment" must be issued to the person from which the vessel was seized and a hearing must take place regarding the disposition of the vessel.

65. California Vehicle Code § 9864 requires that a thirty-day investigation take place before a wrecked, dismantled, destroyed, or abandoned vessel is disposed of.

66. California Harbor and Navigation Code § 523, which applies to vessels removed from a public waterway for obstructing traffic or creating a public safety or environmental hazard, does not permit the destruction of vessels. It authorizes only the removal and storage of vessels.

67. California Harbor and Navigation Code § 526 requires that property seized as "abandoned" under California Harbor and Navigation Code § 522 be held for fifteen days after mailing a notice of the removal to the property's registered owner.

68. California Harbor and Navigation Code § 551 requires that property seized as "marine debris" under California Harbor and Navigation Code § 550 be stored for ten days.

69. Defendants seized and destroyed Plaintiffs vessels' and personal possessions without lawful authority and without following any of the procedures required by state law and by the terms of the State of California's grant.

70. Plaintiffs are informed and believe that defendants have removed and destroyed boats since the October 3, 2018 incident. Plaintiffs are informed and believe that defendants are likely to continue to unlawfully remove and destroy boats from Oakland's waterways.

71. Defendants did not follow lawful procedures. Instead, under the color of law, defendants removed and destroyed plaintiffs' homes and property without notice and an opportunity to be heard. Defendants' practices and conduct have violated plaintiffs' right to due process of law.

72. Plaintiffs are informed and believe that the defendants have been intentional in seizing and destroying plaintiffs' property without due process of law and/or have been deliberately indifferent to the likely outcome that plaintiffs' property would be seized and destroyed without due process of law.

73. Upon information and belief, defendants continue to pursue their policy of removing boats from Oakland waterways without ensuring that lawful procedures are followed.

74. As a direct and proximate consequence of the acts of the defendants, plaintiffs have suffered and continue to suffer from the seizure and destruction of their homes and other personal property, and thus are entitled to compensatory relief.

**THIRD CAUSE OF ACTION**
VIOLATION OF THE TAKINGS CLAUSE
42 U.S.C. § 1983; Fifth Amendment
(Asserted Against All Defendants)

75. Plaintiffs incorporate by reference all of the above allegations.

76. Acting under the color of law, defendants have violated the Takings Clause of the Constitution of the United States by taking plaintiffs' homes and personal property without public purpose and without paying just compensation.

77. As a result, plaintiffs have suffered and continue to suffer the loss of their property without compensation, and thus are entitled to compensatory relief.

**FOURTH CAUSE OF ACTION**
VIOLATION OF RIGHT TO DUE PROCESS OF LAW
Cal. Constitution Article 1, § 7(a)
(Asserted Against All Defendants)

78. Plaintiffs incorporate by reference all of the above allegations.

79. Defendants seized plaintiffs' property without reasonable or legal cause to do so and destroyed it without affording plaintiffs any notice or opportunity to be heard.

80. Plaintiffs have suffered and continue to suffer from the seizure and destruction of their homes and other personal property, and thus are entitled to compensatory relief.

**FIFTH CAUSE OF ACTION**
VIOLATION OF THE BANE ACT
Cal. Civ. Code. § 52.1
(Asserted Against All Defendants)

81. Plaintiffs incorporate by reference all of the above allegations.

82. Defendants interfered by threats, intimidation, or coercion with the rights of plaintiffs, secured by the Constitution of the United States and the Constitution of the State of California.

83. Defendants acted with malice and oppression and the intent to deprive and did deprive plaintiffs of their rights to be free from unlawful seizure of their property through use of threats, intimidation, or coercion.

84. Plaintiffs have suffered and continue to suffer from the seizure and destruction of their homes and other personal property, and thus are entitled to compensatory relief.

**SIXTH CAUSE OF ACTION**
TAXPAYER ACTION
Cal. Code Civ. Pro. § 526A
(Asserted Against the City of Oakland)

85. Plaintiffs incorporate by reference all of the above allegations.

86. Defendants are illegally expending public funds by performing their duties in violation of the constitutional and statutory provisions described above.

87. Plaintiffs have suffered and continue to suffer from the seizure and destruction of their homes and other personal property, and thus are entitled to injunctive, declaratory, and compensatory relief.

**SEVENTH CAUSE OF ACTION**
UNFAIR COMPETITION
Cal. Bus. & Prof. Code § 17200
(Asserted Against Sean Alexander Marine Services Inc.)

88. Plaintiffs incorporate by reference all of the above allegations.

89. California Business and Professions Code § 17200 et seq. prohibits unfair competition, including any unlawful or unfair business act or practice.

90. Sean Alexander engaged in an unlawful business practice when it seized and destroyed plaintiffs' vessels, along with all property on board the vessels, precluding the possibility of providing plaintiffs with sufficient notice or allowing plaintiffs any opportunity to dispute the seizure of their vessels.

91. This business practice violated the constitutional provisions cited above, as well as California Vehicle Code §§ 9872.1 and 9864 and California Harbor and Navigation Code §§ 523, 526, and 551.

92. Defendants' towing and destruction of boats violates California Vehicle Code §§ 9872.1 and 9864 and California Harbor and Navigation Code §§ 523, 526, and 551, which set out the legal requirements for impoundment and disposal of a vessel.

93. California Vehicle Code § 9872.1 does not authorize the impoundment of vessels on which the hull identification number is visibly posted. It also dictates that, after a vessel is impounded, a "notice of impoundment" must be issued to the person from which the vessel was seized and a hearing must take place regarding the disposition of the vessel.

94. California Vehicle Code § 9864 requires that a thirty-day investigation take place before a wrecked, dismantled, destroyed, or abandoned vessel is disposed of.

95. California Harbor and Navigation Code § 523, which applies to vessels removed from a public waterway for obstructing traffic or creating a public safety or environmental

hazard, does not permit the destruction of vessels. It authorizes only the removal and storage of vessels.

96. California Harbor and Navigation Code § 526 requires that property seized as "abandoned" under California Harbor and Navigation Code § 522 be held for fifteen days after mailing a notice of the removal to the property's registered owner.

97. California Harbor and Navigation Code § 551 requires that property seized as "marine debris" under California Harbor and Navigation Code § 550 be stored for ten days.

98. Defendants seized and destroyed plaintiffs vessels' and personal possessions without following any of the procedures required by state law and by the terms of the State of California's grant.

99. Plaintiffs are informed and believe that defendants have removed and destroyed boats again since the October 3, 2018 incident. Plaintiffs are informed and believe that Defendants are likely to continue to unlawfully remove and destroy boats from Oakland's waterways.

100. As a result of Sean Alexander's unlawful business practice in violation of the constitutional and statutory provisions cited above, plaintiffs lost property and money, including but not limited to the vessels and belongings that Sean Alexander destroyed.

101. The destruction of plaintiffs' vessels and belongings without sufficient notice or an opportunity to dispute the seizure also constitutes an unfair business practice, because the harm to victims that results from this practice outweighs its utility to the business and the practice offends public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

102. Pursuant to California Business and Professions Code § 17203, plaintiffs are entitled to restitution of all funds obtained by Sean Alexander by reason of and through the use of the unlawful and unfair business practice.

**EIGHTH CAUSE OF ACTION**
CONVERSION
(Asserted Against All Defendants)

103. Plaintiffs incorporate by reference all of the above allegations.

104. Plaintiffs were at all times mentioned herein the owners of the property seized and destroyed by the City of Oakland and Sean Alexander Marine Services. The property seized and destroyed includes the vessels that plaintiffs called home and all of the belongings that were on board these vessels, including appliances, tool sets, and family heirlooms.

105. Defendants the City of Oakland and Sean Alexander Marine Services interfered with plaintiffs' possession of their property by destroying the property without plaintiffs' consent.

106. As a direct and proximate consequence of the City of Oakland and Sean Alexander Marine Services' acts, plaintiffs have suffered and continue to suffer from the seizure and destruction of their homes and personal property and are thus entitled to compensatory relief.

**EIGHTH CAUSE OF ACTION**
NEGLIGENCE
(Asserted Against All Defendants)

107. Plaintiffs incorporate by reference all of the above allegations.

108. Defendants the City of Oakland, Kaleo Albino, Patrick Gonzales, and Sean Alexander Marine Services owed plaintiffs a duty of care to not seize and destroy their property without lawful authority to do so.

109. Defendants knew or should have known that failing to follow the law when taking and destroying vessels would cause plaintiffs to suffer harm from the loss of their personal property.

110. Defendants the City of Oakland, Kaleo Albino, Patrick Gonzales, and Sean Alexander Marine Services breached their duty of care by seizing and destroying plaintiffs' property without having lawful authority to do so and without following lawful procedures.

111. As a result of defendants' negligent removal and destruction of their property, plaintiffs suffered and continue to suffer from the seizure and destruction of their homes and personal property and are thus entitled to compensatory relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray as follows:

a. that this Court issue a temporary restraining order and/or preliminary injunction enjoining and restraining Defendants from continuing or repeating the unlawful practices and conduct complained of herein;

b. that this Court issue a permanent injunction enjoining and restraining Defendants from continuing or repeating the unlawful practices and conduct complained of herein;

c. that this Court issue an injunction ordering Defendants to return Ms. De la Riva's Nautaline houseboat to her possession if the vessel has not been destroyed.

d. for declaratory judgment that Defendants' practices and conduct violate the constitutional and statutory provisions cited above;

e. for damages in an amount according to proof at time of trial;

f. for attorney's fees as provided by law;

g. for costs of suit; and

h. for any such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  September 27, 2019                    EAST BAY COMMUNITY LAW CENTER

                                              By:   /S/ Sharon Djemal
                                                    Sharon Djemal
                                                    Attorney for Plaintiffs

- 15 -

Complaint for Declaratory and Injunctive Relief and Damages
*De la Riva v. City of Oakland*, Case No.